UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR 23-0270 APM |
| | ) | |
| JUAN RODRIGUEZ | ) | |
| | ) | |

_____

MR. RODRIGUEZ'S SENTENCING MEMORANDUM

**Juan Rodriguez**

Juan Rodriguez is a hard-working young man devoted to providing for his family and being a father to his two children. He is divorced from his wife, Eliana Restrepo, but they remain close. Attached is her support letter. He adopted her two children when they married. He continues to present in their lives. He works as a truck driver for a recycling company (letter from his employer attached) but has been gainfully employed his entire adult life. He is a productive member of the community.

Mr. Rodriguez previously ran a successful delivery business for than 3 years. He drove for a medical delivery company; a job he obtained through a temp agency. The owner of that company decided to close his business and Juan saw an opportunity. He established Revenant Transportation Services and inherited the clients of the closed company. CVS was his primary client. As the owner of a new and small company, Juan

1

worked many hours. It was a struggle to keep the company afloat. He also employed several other drivers and plainly felt the responsibility of being a boss. In the spring of 2020, unfortunately, the COVID-19 pandemic hit. The impact on the economy and specifically on his business was too much. He had to close the business in April, 2020.

### January 6th

During the rest of 2020 Mr. Rodriguez tried to find work and focus on his family. It was an election year and he heard all of the rhetoric and commentary that goes along with a presidential election. He had concerns about the outcome of the 2020 election. He had supported President Trump.

Mr. Rodriguez heard about the "Stop the Steal" rally scheduled for January 6, 2021. He understood the rally was organized by/for former president Donald Trump. Juan had never attended a Trump rally before and wanted to hear him speak. He wanted to show his support for then President Trump.

Mr. Rodriguez went to the rally at the Ellipse on January 6 and listened to the speakers. Unfortunately, he had to leave the area before President Trump took the stage. He did not get to hear the speech. Coming back to the Mall area later, Juan saw the group heading to the Capitol.

Arriving at the Capitol, the rally/protest quickly became heated. Mr. Rodriguez had no control over anything in the chaos around him. He basically just tried to tread water and manage his own safety within the mob. People did attempt to storm the

building that day (and succeeded). People did fight with police officers. Juan did not see any of that activity up close. He was not involved in those actions. He does, however, remember the dispersal of tear gas.

Gas was unleashed into the crowds. One result was the crowd moving towards the Capitol building to get out of the cloud. Juan saw, and felt, the mass push up to and against some short black fencing. No one was crushed, it was not a stampede, but it appeared to Juan to be a potential danger. Other people started to breakdown and remove the fencing to avoid injury. Mr. Rodriguez took down some of the fence as well. He broke off some pieces and moved them to the side. Shortly after another person in the group counseled him to stop taking down the fence. He did.

Mr. Rodriguez walked around in the crowd. He approached the building on several sides. He did not try to go in. He saw a woman get pepper sprayed at close range near one door and wanted nothing to do with that.

While walking around the building, Mr. Rodriguez realized that his Amtrak ticket – his return ticket to RI – was on his phone. He also realized he needed to charge his phone. Walking near the East side entrance of the Capitol  Mr. Rodriguez noticed some office windows had been broken. A man near him suggested Juan try to recharge his phone inside that office. He looked in, decided he could charge his phone inside, and climbed into the building. Mr. Rodriguez understands that he had no permission to enter the building that day. He recognizes this was a poor decision.

Another man was inside the office as well. Mr. Rodriguez did not know him, but understands it was Mr. Fan, his co-defendant. After a period of time there was knocking on the door. Mr. Fan opened the door and police officers came into the office. The officers took command of Mr. Rodriguez and Mr. Fan and escorted them out of the building. Outside, Juan realized he left his phone inside. He went back to the window from the outside and asked the officers if he could have his cellphone back. The officers gave him the phone back.

Mr. Rodriguez left the area after that and went back home to Rhode Island. He did not go on to social media posting pictures from the day. He did not boast about his presence or participation. Mr. Rodriguez tried to return to his normal life at home. He did not dwell on what happened that day; the chaos was somewhat overwhelming. He does not remember all of the events of that day. About 20 months later, however, the FBI appeared at his home and started to question him. He did not hear anything else about the riot until he was arrested 11 months after the FBI contact.

Mr. Rodriguez regrets making the decision to enter the Capitol that day. He understands the wrongness of his actions.

**The Minimally Sufficient Sentence**

The Court must consider the factors of punishment, deterrence, protection of the public, and rehabilitation when determining a sufficient but not greater than necessary sentence. 18 U.S.C. § 3553(a). While a prison sentence plainly punishes a

person for misconduct, a sentence without incarceration can also sufficiently exact punishment. For Mr. Rodriguez, a period of probation fairly supports 18 U.S.C. § 3553(a).

A period of probation is punishment. Congress has provided probation as a punishment in the federal sentencing scheme. *See generally*, 18 U.S.C. §§ 3561 and 3583. The origin of probation stems from the idea/concept that alternatives to incarceration may produce greater benefits to society in some cases. While sentences of incarceration are inherently more severe than sentences of probation, offenders on probation are nonetheless subject to conditions that substantially restrict their liberty. *See Gall v. United States*, 552 U.S. 38, 48 (2007), *citing United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'") (*quoting Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987).

> [P]robation is not an act of leniency. Probation is a substantial restriction of freedom, it is not forgiveness, and it is not an endorsement of the offense. The Defendant will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or … the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term.

*United States v. Gall*, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005) (citation omitted).

A probationary term also promotes the other § 3553(a) sentencing objectives of deterrence, protection of the public, and rehabilitation. Mr. Rodriguez will not be able to make many of the important decisions in his life without the involvement of his probation officer. He will be required to comply with his release conditions or face a prison sentence. Close personal oversight from a probation officer provides a distinct deterrent. It also helps to ensure that the probationer does not reoffend. And a period of supervision will give Mr. Rodriguez access to supports and programs to aid his rehabilitative path should he need those services.

He has already suffered certain punishments. He has already been under the supervision of the probation department for more than 6 months. His arrest and prosecution have garnered local press coverage. He is now known as an "insurrectionist" in the community. Deserved or not, that label will follow him as he moves on with his life.

Overall, a sentence of probation will promote § 3553(a) in a far more effective manner than any harsher sentence might. Mr. Rodriguez will be able to work without interruption and provide for himself and his family. He will also be able to make up for his conduct and attempt to regain his good name in the community through positive actions.

**Conclusion**

Like most of us, Mr. Rodriguez did not anticipate the full chaos and riot that happened at the Capitol on January 6, 2021. He acknowledges and regrets his participation in this event. He is very sorry for his conduct. For all of these reasons the Court should grant Mr. Rodriguez's request for a sentence of probation.

Respectfully submitted
Juan Rodriguez
By his attorney,


/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org


CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Alexandra Foster, Assistant United States Attorney, on February 9, 2024.

/s/ Kevin J. Fitzgerald