**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-00270 (APM)** |
| **v.** | : | |
| | : | |
| **JUAN RODRIGUEZ,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Juan Rodriguez has pleaded guilty to two misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(C)(i) (Enter and Remain in a Room in the Capitol Building with the Intent to Disrupt) (Count Four) and a violation of 40 U.S.C. § 5104(e)(2)(E), (Obstruct and Impede Passage in a Capitol Building) (Count Five). For the reasons set forth herein, the government requests that this Court sentence Rodriguez to 90 days' incarceration on Count Four and 36 months' probation on Count Five. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I.    Introduction

Defendant Juan Rodriguez, a 30-year-old truck driver from Rhode Island, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful

1

transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.9 million in losses.[1]

Rodriguez pleaded guilty to violations of 40 U.S.C. §§ 5104(e)(2)(C)(i) and (e)(2)(E). The government's recommendation is supported by Rodriguez's: (1) presence at the Capitol grounds for hours; (2) his involvement in forcibly removing the permanent railings on the West Plaza; (3) his decision to climb through a broken window and enter a Senate Office; and (4) his complete lack of remorse.

The Court must also consider that Rodriguez's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Rodriguez's crime support a sentence of 90 days' incarceration and three years of probation in this case.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 34 (Statement of Offense), ¶¶ 1-7.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Rodriguez's Role in the January 6, 2021 Attack on the Capitol*

Rodriguez traveled to Washington, D.C. from his home in Rhode Island on an Amtrak train on the night of January 5, 2021.

Rodriguez was first seen on the restricted Capitol grounds at 1:19 p.m.



*Image 1 - Rodriguez (circled in yellow) on the West Lawn, approaching the West Plaza[2]*

To get to the West Lawn, Rodriguez walked past barricades marking the Capitol grounds as restricted. He nonetheless walked with other rioters onto the West Lawn and the West Plaza, towards the U.S. Capitol Building.

---

[2]http://www.bguthriephotos.com/Graphlib/GraphData21.nsf/Images/2021_DC_Losers_March_2 10106_0640/$File/L2021D_210106_130.JPG

Rodriguez milled about with the rioters on the West Plaza for a little over an hour, watching as the violence escalated.



*Image 2 – Rodriguez filming with his phone on the Southwest Plaza when police arrived* [3]



*Image 3 – Rodriguez (circled in yellow) near the scaffolding on the West Plaza* [4]

---

[3] https://www.youtube.com/watch?v=naqYCbHmggE&t=788 Timecode: 13:08
[4] https://www.youtube.com/watch?v=eAr-4jrTkr8&t=1520 Timecode: 25:20 (The videographer captures rioters grappling with law enforcement and pulling away barricades; Rodriguez walks across the screen at the tail end of that event. *See* Timecode 24:30-24:45.)

Rodriguez knew that the police were trying to maintain a police line behind the barricades. His reaction was not to assist the police, but to remove that zone of safety. Exhibit 4[5] reflects Rodriguez actively removing the permanent barricade from the West Plaza, first by pulling them with his hands and then kicking them with his feet, and ultimately walking the barricade out of the way, so rioters could gain easier access to the West Front:



*Image 4A – Rodriguez (circled in yellow) pulling  on the barricade (Exhibit 4 at 00:13)*

---

[5] https://archive.org/download/pg5QezMoijreFiTZs/pg5QezMoijreFiTZs.mpeg4 Timecode 08:43 to 09:08.



*Image 4B – Rodriguez (circled in yellow) kicking the barricade (Exhibit 4 at 00:22)*



*Image 4C - Rodriguez (circled in yellow) walking the barricade off the West Front
(Exhibit 4 at 00:24)*

As reflected in the video, this was not just a matter of picking up a temporary bike rack and moving it. Rodriguez -and other rioters- had to push and kick this barricade. Once rioters broke the police line and took over the West Plaza, Rodriguez joined them on the West Plaza.



*Image 5 – Rodriguez (circled in yellow) on the West Plaza[6]*



*Image 6 – Rodriguez (circled in yellow) walking towards the Southwest stairs[7]*

---

[6] https://www.youtube.com/watch?v=OsP_SFMEeOw&t=219 Timecode: 3:39
[7] https://archive.org/details/Cr8gR9nDaXepr7oAk Timecode: 2:03:32

At approximately 2:33 p.m., Rodriguez climbed the Southwest stairs, heading closer to the U.S. Capitol building:



*Image 7 – Rodriguez (circled in yellow) climbing the Southwest steps*

From approximately 2:30 p.m. through approximately 3:13 p.m., Rodriguez was in the crowd at the Lower West Terrace and the Northwest riser, watching while rioters battled with police at the Archway on the Lower West Terrace.



*Image 8 – Rodriguez (circled in yellow) at the Lower West Terrace, facing the Archway[8]*

Later that afternoon, after 3:13 p.m., Rodriguez made his way around the U.S. Capitol Building (the Building) to the East Doors. There, Rodriguez was surrounded by hundreds of rioters standing in front of a closed door and chanting "Stop the Steal" and "USA."

---

[8] https://archive.org/details/Cr8gR9nDaXepr7oAk Timecode: 2:19:50



*Image 9 – Rodriguez at the East Door.*[9]

The doors on the East side of the Building were closed by this point, but Rodriguez decided to gain access into the Building by climbing into Office S202. He climbed in through a window, whose panes had been broken out by other rioters earlier in the day. The window is located to the right of the main entrance to the Building, in the area circled in red below:

---

[9] https://www.youtube.com/watch?v=TJuhysJzbSA&t=914 Timecode: 15:14



*Image 10 – Window visible behind the pillar*

Office S202 was an office used by Senator Schumer's staff in the U.S. Capitol Building. At the time Rodriguez entered the office through the shattered window, he knew that he had no right to be in the office, but he climbed in and stayed nonetheless. Once he climbed in, Rodriguez stayed in S202 for about 20-30minutes before being forcibly removed by law enforcement.

At around 4:00 p.m., several U.S. Capitol Police (USCP) officers tried to open the door of Office S202, because they heard voices in the Office. The Office door was locked, so officers knocked on the door. Rodriguez was inside the Office along with co-defendant Alexander Fan and a third man. Rodriguez heard USCP knocking, but he did not open the door. After some time, one of the three men inside unlocked the door, and the officers gained access to Office S202.

Once inside, officers found Rodriguez, his co-defendant Fan (red baseball hat) and the third man (GoPro helmet) in the office. Glass from the shattered windowpanes littered the floor of the office.



*Image 11 – Picture taken from the broken window capturing Rodriguez (circled in yellow) after the USCP entered Office S202[10]*

At around 4:25 p.m., officers escorted Rodriguez, Fan and the third man out of Office S202, through the Rotunda, and out the front door of the U.S. Capitol Building.



*Image 12 – Rodriguez and Fan (circled in red) being escorted out of S202[11]*

---

[10] https://www.instagram.com/p/CJuT_yHhs2/?utm_cource+ig_web_copy_link Timecode 0:01
[11] USCP CCTV



*Image 13 – Rodriguez and Fan (circled in red) being escorted out through the Rotunda[12]*

Minutes later, Rodriguez was back, standing on the ledge outside the same window. Rodriguez asked officers for his cell phone, which he had left charging in Office S202. Officers obliged. They found his phone, unplugged it from the wall, checked to confirm that it was his, and then returned it to Rodriguez.



*Image 14 – Rodriguez (circled in yellow) asking offices for his phone*

Rodriguez told officers that he left the Capitol grounds at around 6 pm. By that point, Rodriguez had been on U.S. Capitol grounds and in the building for almost five hours.

---

[12] USCP CCTV

*Rodriguez's Interview with the FBI*

Rodriguez voluntarily spoke to the FBI in September 2022 and again -after entering the plea agreement- in February 2024. Rodriguez admitted to travelling down to Washington, D.C. to attend a Trump rally. He identified himself as the man in the Batman hat captured in images above. In September 2022, Rodriguez stated that he remained on the Capitol grounds but never entered the building, and ended the interview. After February 2024, Rodriguez conceded that he entered the building. When asked about the barricade, Rodriguez told the agents that he was only moving them to get them out of the way, because they posed a tripping hazard. At no point did Rodriguez appear remorseful or express that he would never do it again.

*The Charges and Plea Agreement*

On August 10, 2023, the United States charged Rodriguez with a five-count Information for violating 18 U.S.C. §§1752(a)(1) and (2) and 40 U.S.C. §§5104(e)(2)(C), (e)(2)(D) and (e)(2)(E). On October 27, 2023, pursuant to a plea agreement, Rodriguez pleaded guilty to Counts four and five of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(C) and (e)(2)(E). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Rodriguez now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(C) and (e)(2)(E). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 for each count. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 90 days' incarceration followed by three years' probation.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Rodriguez's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably for a misdemeanor defendant, Rodriguez did engage in violence and destruction when he pulled and kicked down the metal barricade. Such actions warrant a higher sentence..

Rodriguez witnessed some of the most violent interactions between the police and the rioters on the West Front. He chose to stay during the entirety of these events and assist the rioters by destroying part of the permanent barricades. (This was not just a question of walking a temporary bike rack away. Rodriguez needed to pull and kick at a permanent barricade.) Further, once he saw an opportunity to get into the U.S. Capitol building, he took it, and climbed into Office S202, where he hid behind a locked door as police struggled to clear the Capitol building of rioters.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  Rodriguez's History and Characteristics

As set forth in the PSR, Rodriguez has a recent unresolved arrest for carrying a pistol without a license in February 2023. This arrest occurred after January 6, 2021, but before his arrest in this matter. He has also been employed on and off as a driver for years.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

17

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant weighs heavily in favor of a lengthy term of incarceration.

First, although Rodriguez accepted responsibility by stipulating to all of the facts underlying his guilt and resolving his case through a plea, his post-January 6—and even post-plea—conduct and statements are troubling. Rodriguez initially lied to the FBI and told them that he never entered the building. Post-plea, Rodriguez entered the building, but repeatedly minimized his criminal behavior, almost making it seem like he was there to help. Since that time, he has taken no steps to denounce his actions on January 6, 2021 or express any remorse, including to the Probation officer who conducted his PSR interview or the agents who spoke with him on February 9th. The Court should view any remorse Rodriguez expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

//

//

**E.  The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[13] This Court must sentence Rodriguez based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Rodriguez has pleaded guilty to Counts Four and Five of the Information, charging him with Entering and Remaining in a Room in the Capitol Building with the Intent to Disrupt and Obstructing and Impeding Passage in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C)(i) and 40 U.S.C. § 5104(e)(2)(E). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[13] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Buteau*, 21-cr-489 (RDM), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) and was sentenced by Judge Moss to 90 days of incarceration. Whereas Rodriguez moved barricades, Buteau moved a trashcan to block a closing door inside the Capitol by the Capitol Visitor's Center. Buteau, like Rodriguez, showed no remorse. There are some important distinctions, however: Buteau spat at an officer after being sprayed and posted on social media. Rodriguez, by contrast, entered a private office space through a broken window and lingered in that space behind a locked door as police tried to clear the Capitol. He also remained in the area for five hours.

In *United States v. Smith*, 21-cr-290 (RBW), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) and was sentenced by Judge Walton to 90 days of incarceration. Both Rodriguez and Smith took actions that impacted law enforcement's abilities to secure the Capitol. Whereas Smith removed iron benches used as barricades on the inside of the Rotunda doors and also attempted to open the Rotunda doors before being stopped, Rodriguez removed permanent barricades form the West Front. Whereas Smith returned to the Rotunda to join a crowd that pushed against the police line and resulted in a successful breach of the Rotunda doors, Rodriguez climbed through a broken window, occupied a Senator's Office and refused to open the door to USCP officers.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[14] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[14] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Rodriguez must pay $500 in restitution, which reflects in part the role Rodriguez played in the riot on January 6.[15] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Rodriguez's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 88.

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Rodriguez to 90 days' incarceration on Count Four and 36 months' probation on Count Five. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Rodriguez's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   s/ *Alexandra F. Foster*
Assistant United States Attorney
ALEXANDRA F. FOSTER

---

[15] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).